# Exhibit G

obligations under our system of taxation but also of their rights. However, when a decision to enforce has been made, the Service will have no hesitancy in pursuing the matter to conclusion.

**1.2.14.1.2 Policy Statement 5-2 (Approved 02-17-2000)**

(1) **COLLECTING PRINCIPLES**

(2) All our decisions about collecting must be guided by these principles. To the extent that they are, we will succeed in our mission.

(3) **SERVICE AND ASSISTANCE -- All taxpayers are entitled to courteous, responsive, and effective service and assistance in all their dealings with the Service.**

(4) We will actively assist taxpayers who try to comply with the law, and work to continually improve the quality of our systems and service to meet the needs of our customes. All taxpayers, whether delinquent or fully compliant, are entitled to prompt and professional service whenever they deal with Service employees.

(5) **TAXPAYER RIGHTS -- We will observe taxpayers' rights, including their rights to privacy and to fair and courteous treatment.**

(6) This affirms our commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998. Taxpayers will be protected from unauthorized disclosure of information.

(7) **COMPLIANCE -- The public trust requires us to ensure that all taxpayers promptly file their returns and pay the proper amount of tax, regardless of the amount owed.**

(8) The public as a whole is our customer, not just delinquent taxpayers. Our customers expect us to promote voluntary compliance by ensuring that all promptly pay their fair share. Employees should work with taxpayers to meet all their filing and paying requirements, not only the delinquency at hand. This involves identifying and addressing non-compliance to prevent future delinquencies. All types of taxpayers (individual and business) who fail to timely file their returns or pay their fair share of taxes must resolve both current and delinquent taxes to be considered compliant.

(9) **CASE RESOLUTION -- While we will actively assist taxpayers to comply, we will also take appropriate enforcement actions when warranted to resolve the delinquency. To resolve a case, good judgment is needed to make sound decisions on the appropriate action needed.**

(10) All taxpayers are required to pay by the due date of the return. From a broad range of collecting tools, employees will select the one(s) most appropriate for each case. Case resolution, including actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and *IRC 6020(b)*, are important elements of an effective compliance program. When it is appropriate to take such actions, it should be done promptly, yet judiciously, and based on the facts of each case.

**1.2.14.1.3 Policy Statement 5-14 (Formerly P-5-60) (Approved 06-09-2003)**

(1) **Trust Fund Recovery Penalty Assessments**

(2) Trust Fund Recovery Penalty Assessments: The trust fund recovery penalty, applicable to withheld income and employment (social security and railroad retirement) taxes or collected excise taxes, will be used to facilitate the collection of tax and enhance voluntary compliance. If a business has failed to collect or pay over income and employment taxes, or has failed to pay over collected

excise taxes, the trust fund recovery penalty may be asserted against those determined to have been responsible and willful in failing to pay over the tax. Responsibility and willfulness must both be established. The withheld income and employment taxes or collected excise taxes will be collected only once, whether from the business, or from one or more of its responsible persons.

(3) Collection of the withheld income and employment taxes or collected excise taxes is achieved when the Service's right to retain the amount collected is established.

(4) **Determination of Responsible Persons**

(5) Responsibility is a matter of status, duty, and authority. Those performing ministerial acts without exercising independent judgment will not be deemed responsible.

(6) In general, non-owner employees of the business entity, who act solely under the dominion and control of others, and who are not in a position to make independent decisions on behalf of the business entity, will not be asserted the trust fund recovery penalty. The penalty shall not be imposed on unpaid, volunteer members of any board of trustees or directors of an organization referred to in *section 501 of the Internal Revenue Code* to the extent such members are solely serving in an honorary capacity, do not participate in the day-to-day or financial operations of the organization, and/or do not have knowledge of the failure on which such penalty is imposed.

(7) In order to make accurate determinations, all relevant issues should be thoroughly investigated. An individual will not be recommended for assertion if sufficient information is not available to demonstrate he or she was actively involved in the corporation at the time the liability was not being paid. However, this shall not apply if the potentially responsible individual intentionally makes information unavailable to impede the investigation. Field investigations to determine the trust fund recovery penalty liability will be conducted promptly to enhance access to relevant information and reduce burden to taxpayers.

(8) Absent statute considerations, assertion recommendations normally will be withheld in cases of approved and adhered to business installment agreements and bankruptcy payment plans. To the extent necessary, information will be gathered to support a possible assessment in the event the agreement is defaulted.

(9) **Application of Payments in Determining Trust Fund Recovery Penalty Assessments (effective for assessments where notices of TFRP liability are issued on or after June 19, 2000 and for any undesignated payment made on or after January 1, 2003)**

(10) Any payment made on the business account is deemed to represent payment of the nontrust fund portion of the tax liability (e.g., employer's share of FICA) unless designated otherwise by the taxpayer. The taxpayer, of course, has no right of designation of payments resulting from enforced collection measures. To the extent partial payments exceed the nontrust fund portion of the tax liability, they are deemed to be applied against the trust fund portion of the tax liability (e.g., withheld income tax, employee's share of FICA, collected excise taxes). Once the nontrust fund and trust fund taxes are paid, the remaining payments will be considered to be applied to assessed fees and collection costs, assessed penalty and interest, and accrued penalty and interest to the date of payment.

(11) **Small Business Administration**

(12) When employees of the Small Business Administration perform duties in accordance with the regulations of the agency, the Service will not consider assertion of the liability provided by *IRC*

*6672* or 3505 against those Small Business Administration employees in any past, current or future cases arising out of these duties.

**1.2.14.1.4 Policy Statement 5-16 (Approved 03-01-1984)**

(1) **Forbearance when reasonable doubt exists that assessment is correct**

(2) Whenever a taxpayer raises a question or presents information creating reasonable doubt as to the correctness or validity of an assessment, reasonable forbearance will be exercised with respect to collection provided:

1. adjustment of the taxpayer's claim is within control of the Service; and
2. the interests of the Government will not be jeopardized.

(3) **Enforced collection measures to be withheld when disaster impairs ability to pay**

(4) Reasonable forbearance should be exercised with respect to the enforced collection of taxes from taxpayers whose businesses are located in areas affected by major disasters such as floods, hurricanes, droughts, fire, etc., and whose ability to pay is impaired by such disasters.

(5) **Forbearance when refund suit is pending on a divisible assessment**

(6) When a refund suit is pending on a divisible assessment, the Service will exercise forbearance with respect to collection provided that the interests of the government are adequately protected and the revenue is not in jeopardy. However, any refunds due the taxpayer may be credited to the unpaid portion of the liability pending the outcome of the suit.

(7) Divisible tax cases are those in which the tax assessment may be divided into separate portions or transactions. For example, a quarterly withholding employment tax liability may be subdivided into individual liabilities covering each employee.

**1.2.14.1.5 Policy Statement 5-28 (Approved 07-10-1959)**

(1) **Successive seizures -- Timing to avoid undue hardship**

(2) The Code authorizes the service of as many successive levies on the same or other income, property, or rights to property, as may be necessary to fully satisfy the tax liability. However, sound judgment should be exercised and the service of successive levies on the same source of income, or type of property, should be so timed as to avoid undue hardship to the taxpayer and/or family.

**1.2.14.1.6 Policy Statement 5-29 (Approved 09-29-1999)**

(1) **Levy on salary or wages -- Generally limited to "take home" pay**

(2) Except for the statutory exemptions in *IRC 6334(a)(8)* and (9), a levy legally attaches to the gross amount of the accrued wages or salary. However, in the interest of administrative expediency, a levy will be considered as attaching only to the "take home" pay of the delinquent taxpayer unless it is determined that the taxpayer is voluntarily allotting his/her pay to an extent that would defeat the purpose of the levy. A levy under *IRC 6331 (h)* which attaches any specified payment due to the taxpayer will not be limited to the"take home"pay.

**1.2.14.1.7 Policy Statement 5-33 (Approved 05-22-1997)**

(1) **Certain Governmental training allowances are not levied**