IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-350 T

(Judge Christine O.C. Miller)

J. CARDENAS & SONS FARMING, INC.,
JUAN CARDENAS AND GRACIELA CARDENAS

Plaintiffs,

v.

THE UNITED STATES,

Defendant,

No. 07-351 T

RIO VISTA CORPORATION,
JUAN CARDENAS AND GRACIELA CARDENAS,

Plaintiffs,

v.

THE UNITED STATES,

Defendant,

REPLY OF THE UNITED STATES IN SUPPORT OF ITS MOTION TO DISMISS IN PART PLAINTIFFS' SECOND AMENDED COMPLAINT

The original complaints filed in this action sought a refund or abatement of taxes allegedly assessed and paid by the corporate taxpayers J. Cardenas & Sons Farming, Inc.

("Cardenas & Sons") and Rio Vista Corporation ("Rio Vista") in connection with the Employer's Annual Tax Return for Agricultural Employees (Form 943) filed by them for the periods in issue. The original complaints did not contain any allegations regarding the Cardenases and their liability for penalties assessed against them pursuant to I.R.C. § 6672. Plaintiffs filed a second amended complaint on January 25, 2008, adding the individual taxpayers Juan and Graciela Cardenas ("Cardenases") as plaintiffs. The second amended complaint raised new issues in that the Cardenases sought a "refund/abatement of *penalties* . . . *assessed*. . . *pursuant to 26 U.S.C. § 6672, the 'responsible officer penalty'*." (Sec. Amend. Compl. ¶ 41) (emphasis added).

The United States moved the Court to dismiss, in part, the second amended complaint filed by plaintiffs, on the ground that this Court lacks subject matter jurisdiction over the following taxpayers and tax periods:

| **Taxpayer** | **Tax period** |
|---|---|
| Cardenas & Sons | 2000 |
| Rio Vista | 1997, 1999, 2001- 2002[1] |
| | 1993 [2] |
| Cardenases | 9/1/2007- 9/30/2007 |

The United States did not seek to dismiss the tax claims of Cardenas & Sons for tax years 1993, 1995 and 1998, or the tax claims for Rio Vista for tax years 1996 and 2003. Plaintiffs have opposed the Government's motion to dismiss in part by alleging (Opp. 5) that the Internal Revenue Service has improperly applied payments that the taxpayers made, resulting in

[1] The United States moved to dismiss Rio Vista's years 1997, 1999, and 2001-2002, based upon lack of jurisdiction.

[2] The United States moved to dismiss Rio Vista's 1993 year based upon failure to state a claim upon which relief can be granted.

"confusion" concerning the timeliness of plaintiffs' refund claims. In their opposition and in a supplemental opposition [3] filed March 13, 2008, plaintiffs failed to adequately address the jurisdictional issues raised with respect to the years in suit. The United States hereby replies.

**STATEMENT**

In its motion to dismiss, the United States showed, by reference to Forms 4340 ("Certificate of Assessments, Payments, and Other Specified Matters"), that for certain taxable years of the two corporate plaintiffs, no payments of employment tax had been made in the two-year period prior to the filing of their claims for refund in September and October 2006. (*See* Deft. Br. 3-6, *citing* Deft. Exs. 1-6.)

Purporting to dispute this assertion, plaintiffs allege in their brief (at 2) that unspecified "Plaintiffs have paid $8,000 each month to the United States Treasury since October 2004." If true, this would mean that "Plaintiffs" had sent the IRS at least 32 monthly checks in the amount of $8,000 (totaling at least $256,000) by the time the first complaint was filed in June 2007. However, what plaintiffs actually purport to show with their evidence (such as it is) is a grand total of four checks of Cardenas & Sons (not Rio Vista or the Cardenases individually) payable to the U.S. Treasury in the amount of $8,000, totaling $32,000 (which four checks appear as Plaintiffs' Exhibit 1). The memo line of each check contains four taxpayer identification numbers--*i.e.*, the employer identification numbers for both Cardenas & Sons and Rio Vista, and the social security numbers for both of the Cardenases individually. The checks nowhere indicate which tax, period, or taxpayer the payment is for. As we will show below, plaintiffs

[3] *See* Plaintiffs' Opposition to the Defendant's Motion to Dismiss In Part Plaintiffs' Second Amended Complaint ("Opposition") and Supplement To Plaintiffs' Opposition To Defendant's Motion to Dismiss In Part Plaintiffs' Second Amended Complaint ("Supplement").

attempt to use and re-use these four checks to support jurisdiction in multiple periods for multiple taxpayers.

However, before plaintiffs' duplicative allocation of these few checks is considered, it must first be pointed out that these checks are not authenticated by anyone.[4] Plaintiffs' Exhibit 1 consists of only the front side of the check, and does not show any cancellation or other evidence that the checks were actually negotiated by the U.S. Treasury.[5]

Plaintiffs' Declaration of Steven Pybrum (Pltf. Ex. A) asserts (in ¶ 4) that the four checks (attached as Pltf. Ex. 1) were payments for tax in connection with Forms 943 for Cardenas & Sons for each of the tax years ending 1993, 1995, 1998, and 2000, and for Rio Vista for each of the tax years 1993, 1996, 1997, 1999, 2001, 2002 and 2003.[6] Mr. Pybrum's declaration also provides two charts of refund claims submitted. (Pltf. Ex. A at ¶¶ 5-6.) In those charts (*ibid*.), payments in the amount of $8,000 are listed a total of thirteen times, suggesting that payments were made in the total amount of $104,000. However, Mr. Pybrum makes no attempt to reconcile these thirteen entries with the four checks, each in the amount of $8,000 (Ptfl. Ex. 1), attached to his declaration.

---

[4]The "Declaration of Steven Pybrum" (Pltf. Ex. A, emphasis added) states at ¶ 1, "Upon information and belief, the checks attached as Exhibit 1 to this declaration are authentic copies of checks payable to the United States Treasury ...."

[5]The lack of evidence that the checks were actually delivered, negotiated by the Government, and honored by the bank is no mere quibble when it is alleged that Plaintiffs' prior tax payments were "diverted" by Plaintiffs' bookkeepers. (Pltf. Br. 2.)

[6] In their opposition plaintiffs do not allege that they "intended" any of the checks to be applied to the 2003 tax year for Rio Vista.

In their brief (Opp. 3) plaintiffs admit that the purported payments at issue were made "without directing to which account the payments should be applied." Plaintiffs also provide no evidence that they provided any written instructions designating that the four alleged payments be applied by the Internal Revenue Service to any particular liability. Plaintiffs, however, make various and self-contradictory assertions (Opp. 6-10) about how the four alleged payments were "intended" by "plaintiffs" to be applied. Without evidence, Plaintiffs' brief asserts for each of the four checks (sometimes multiple times) that "Plaintiffs intended for as much of these payments as necessary to be applied to their most recent alleged outstanding tax liability."[7] They then argue (again, without evidence; *see* Opp. 6-10) that the IRS should have made certain applications, but instead made other applications, as follows:

| | **How Plaintiffs Argue the Payments Should Have Been Applied** | | **How Plaintiffs Allege the Payment Was Applied** | |
|---|---|---|---|---|
| **Check Date** | **Taxpayer(s)** | **Tax Period(s)** | **Taxpayer** | **Tax Period** |
| 2-26-2006 | Rio Vista | 2002 | J. Cardenas & Sons | 1998 |
| 3-21-2006 | Rio Vista<br>Rio Vista | 2001<br>2002 | J. Cardenas & Sons | 1998 |
| 4-24-2006 | J. Cardenas & Sons<br>Rio Vista<br>Rio Vista<br>Rio Vista<br>Rio Vista | 2000<br>1993<br>1997<br>1999<br>2001 | J. Cardenas & Sons | 1998 |
| 5-23-2006 | J. Cardenas & Sons | 2000 | J. Cardenas & Sons | 1995 |

[7]As to the check of April 24, 2006, *see* Opp. 6, 7, 8 (twice), 9; as to the check of May 23, 2006, *see* Opp. 6; as to the check of March 21, 2006, *see* Opp. 9 (twice); as to the check of February 22, 2006, *see* Opp. 9.

## ARGUMENT

### PLAINTIFFS FAILED TO MEET THEIR BURDEN OF ESTABLISHING JURISDICTION

Subject matter jurisdiction may be challenged at any time. *See United States v. Newport News Shipbuilding & Dry Dock Co*., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991)*; Holland v. United States*, 57 Fed. Cl. 540, 550 (2003). Once jurisdiction is challenged the plaintiff bears the burden of establishing jurisdiction, *see McNutt v. Gen. Motors Acceptance Corp*. 298 U.S. 178, 189 (1936), and must establish it by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv*. 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss, the Court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *See Reynolds*, 846 F.2d at 748; *Forestry Surveys v. United States*, 44 Fed. Cl. 485, 490 (1999); *see RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998). Jurisdiction in this case may not be maintained based upon mere averment by plaintiffs. *See McNutt*, 298 U.S. at 189. When allegations of jurisdictional facts are challenged, plaintiffs must come forward and support the jurisdictional facts with competent proof. *Ibid*. Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. *See Raymark Industries, Inc. v. United States*, 15 Cl. Ct. 334, 337 (1988); *Holland*, 57 Fed. Cl. at 551.

#### A. Plaintiffs have not shown that they made the payments on which their jurisdictional argument depends.

A certified copy of a taxpayer's transcript of account prepared by the Internal Revenue Service is considered to be presumptively correct; and the taxpayer must produce evidence to the contrary to rebut this presumption. *See Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991); *Dallin ex rel. Estate of Young v. United States*, 62 Fed. Cl. 589, 600-601 (2004) (in a tax

refund suit there is a presumption of the correctness of the findings of the Commissioner). To purport to contradict the certified evidence of the records of the Internal Revenue Service, Plaintiffs have produced no evidence. Their critical exhibit (Plt. Ex. 1) is unauthenticated and consists of photocopies of the front side only of four checks, which do not show whether the checks were ever cancelled. Four properly authenticated checks would hardly substantiate Plaintiffs' allegations,[8] but Plaintiffs' Exhibit 1 does not prove even the four purported payments.

**B. Undesignated tax payments may be applied by the Internal Revenue Service to the Government's best interest.**

If a taxpayer makes a voluntary payment, *i.e.*, a payment not made pursuant to judicial or administrative order, the taxpayer has the right to direct the application of the payment to whatever type of liability the taxpayer chooses. *See Muntwyler v. United States*, 703 F.2d 1030 (7th Cir. 1983). The designation must be in writing and it must accompany the payment. If a taxpayer fails to designate to which tax liability a voluntary payment is to be applied, the Internal Revenue Service will apply the payment in the Government's best interest. *See Buffalow v. United States*, 109 F.3d 570, 575 (9th Cir. 1997);*United States v. Schroeder*, 900 F.2d 1144, 1149 (7th Cir. 1990); *Muntwyler*, 703 F.2d at 1032[9]; *Hewitt v. United States*, 377 F.2d 921, 925 (5th Cir. 1967); Rev. Proc. 2002-26, § 2, 2002-1 C.B. 746 (if a taxpayer "does not provide

[8] *See, e.g.*, Opp. 3: "Between August 2004 and the present, Plaintiffs have made payments ... totaling at least $340,000."

[9] A taxpayer has no right to designate the application of an involuntary payment, *i.e.*, a payment made pursuant to judicial action or some form of administrative seizure, like a levy. *Muntwyler*, 703 F.2d 1030.

specific written directions as to the application of payment, the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest”). [10]

Plaintiffs contend (Opp. 4) that the Internal Revenue Service has not applied their tax payments in a “reasonable and logical manner” but has “embarked on an arbitrary course of conduct in applying and crediting payments.” In this action, the plaintiffs offered no evidence that they designated, *i.e*., provided any written directions to the Internal Revenue Service regarding the application of the four alleged payments (*see* Pltf. Ex. 1). Plaintiffs' opposition (Opp. 6-10) argues that plaintiffs "intended" for the four alleged payments to be "applied to their most recent alleged outstanding liability." However, there is no evidence that this intention was communicated to the Internal Revenue Service by any of the plaintiffs, nor what such a communication would have meant in this context. Plaintiffs have produced no probative evidence indicating they provided a written designation to the Internal Revenue Service explaining how the alleged payments were to be applied. [11] Absent a written designation by plaintiffs explaining how a payment is to be applied, the Internal Revenue Service is allowed to apply an undesignated voluntary payment to the Government’s best interest. Plaintiffs have not

---

[10] In their opposition (Opp. 2-5) plaintiffs allege that the Internal Revenue Service improperly and arbitrarily applied tax payments which they made for the periods in issue. As an example of the Internal Revenue Service’s arbitrariness in applying and crediting payments plaintiffs rely (Opp. 4-5) upon the certified transcript of account for Cardenas & Sons for the 1993 tax year, a year which is not included in the Government’s motion to dismiss in part. Thus, plaintiffs discussion of the 1993 transcript of account for Cardenas & Son is irrelevant to the issues pending before the Court.

[11] Plaintiffs' opposition indicates that certain payments by Cardenas & Sons were "intended" to be applied to Rio Vista's tax liability. Plaintiffs provide no authority for the assertion that an undesignated payment should or could be applied by the Internal Revenue Service to the liability of a taxpayer not making the payment. *Cf Hewitt*, 377 F.2d at 925 (third-party had no right to direct application of a tax payment made by a corporation.)

established that the Internal Revenue Service misapplied any payments made during the periods in issue.

**C. Plaintiffs do not dispute that the amount sought by Rio Vista in its claim for refund for the 1993 tax year was previously abated.**

Rio Vista filed a claim for refund for the 1993 tax year seeking a refund of $9.64 on October 4, 2006. (Def. Ex. 8.)[12] Plaintiffs concede (Opp. 7) that on December 11, 2006, there was an abatement of $1,038.34 with respect to Rio Vista's 1993 tax year. As a result of the abatement of penalties for the 1993 tax year, Rio Vista has failed to establish that the amount sought in the 1993 claim for refund was not previously refunded or abated. Therefore, under RCFC 12(b)(6) Rio Vista's 1993 claim for refund fails to state a claim upon which relief can be granted. *See Donahue v. United States*, 33 Fed. Cl. 600, 604 (1995) (taxpayer failed to establish entitlement to additional refund beyond that which had already been received).

**D. The civil penalty imposed on the Cardenases under I.R.C. § 6672 is separate and distinct from the employment tax liability imposed on Rio Vista and Cardenas & Sons pursuant to I.R.C. §§ 3101-3102 & 3401-3403.**

Plaintiffs contend (Opp. 11) that this Court has jurisdiction over the allegations in Count III of the second amended complaint (which involves § 6672 "responsible officer" penalties assessed against the Cardenases) because the § 6672 liability and the employer's employment tax liability are, in effect, the same tax. This allegation is wrong as a matter of law. Count III of plaintiffs' second amended complaint raised new issues in that the Cardenases sought (Sec. Amend. Compl. ¶ 41 (emphasis added) a "refund/abatement of *penalties* . . . *assessed*. . . *pursuant to 26 U.S.C. § 6672, the 'responsible officer penalty*'." The original complaints filed in this action sought a refund or abatement of taxes allegedly assessed and paid by Cardenas &

---

[12] Defendant's exhibits are attached to its opening brief filed on February 26, 2008.

Sons and Rio Vista in connection with the Employer's Annual Tax Return for Agricultural Employees (Form 943) filed by them for the periods in issue. The original complaints did not contain any allegations regarding the Cardenases and their liability for penalties assessed against them pursuant to § 6672.

An employer's employment tax liability arises pursuant to I.R.C. §§ 3101-3102 and 3401-3403, *i.e.*, an employer is required to withhold social security and federal income taxes from the wages of its employees. Section 6672(a)[13] imposes personal liability upon those individuals who are responsible for a corporation's failure to pay over the taxes withheld. *See White v. United States*, 178 Ct. Cl. 765, 771, 372 F.2d 513, 516 (1967); *accord Godfrey v. United States*, 748 F.2d 1568, 1575 (Fed. Cir. 1984).[14] The courts have used the phrase "responsible person" to identify those corporate officials liable for § 6672 penalties. *See Slodov v. United States*, 436 U.S. 238, 246 n.7 (1978); *Farris v. United States*, 4 Cl. Ct. 633, 635-36 (1984). The determination of a taxpayer's status as a "responsible person" is dependent upon the facts and circumstances of each case. *See Godfrey*, 748 F.2d at 1575.

The liability imposed under § 6672 is separate and distinct from the liability imposed on the employer under §§ 3101-3102 and 3401-3403. *See Otte v. United States,* 419 U.S. 43, 52

---

[13] I.R.C. § 6672(a) provides in part:

> (a) General Rule.--Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

[14] *See also Feist v. United States,* 221 Ct. Cl. 531, 607 F.2d 954 (1979); *Bolding v. United States*, 215 Ct. Cl. 148, 565 F.2d 663 (1977); *Burack v. United States*, 198 Ct. Cl. 855, 461 F.2d 1282 (1972); *Scott v. United States*, 173 Ct. Cl. 650, 354 F.2d 292 (1965).

(1974) (§ 6672 would "impose a penalty, apart from the tax, on a person who willfully fails to fulfill his obligation to withhold or who willfully attempts to evade or defeat any tax"); *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1549 (11th Cir. 1986); *Howard v. United States*, 711 F.2d 729, 733 (5th Cir. 1983); *Dallin*, 62 Fed. Cl. at 589. Through the mechanism of § 6672, the Government can collect 100 percent of an employer's delinquent taxes from those persons who are responsible for the corporations failure to pay the taxes owed. *See Huckabee*, 783 F.2d at 1549. However, the assessment of the § 6672 liability is separate from the employer's original tax liability. (*Ibid*.) Therefore, plaintiffs' contention (Opp. 11) that the penalty assessed pursuant to § 6672 and an employer's employment tax liability under §§ 3101-3102 and 3401-3403 are the same tax should be rejected.

Plaintiffs reliance upon *Gens v. United States*, 222 Ct. Cl. 407 (1980), *cert. denied*, 459 U.S. 906 (1982), for the proposition that the § 6672 penalty and the underlying employment taxes are the same tax is also misplaced. *Gens* illustrates the proposition that for any liability which arises from a failure to pay employment taxes, § 6672 provides for a separate assessment of a civil penalty for individuals determined to be "responsible persons" under that provision. The Court in *Gens*, 222 Ct. Cl. at 415, stated " [T]he Government is entitled, through an assertion of 100-percent penalty assessments, only to one satisfaction of the payroll tax liability; once the Government has obtained a single satisfaction, it must abate all 100-percent penalty assessments which have arisen from the payroll tax liability . . . ." Therefore, although the Government, through the mechanism of § 6672, can recover 100% of the original employment tax due, separate assessments, and separate liabilities, arise from that original employment tax liability.

In support of their supplemental opposition, plaintiffs rely upon (Pltf. Ex. 1) copies of Notices of Overpaid Tax Applied to Other Tax You Owe ("Notices of Overpaid Tax"), which the Internal Revenue Service mailed to the Cardenases on March 10, 2008. The Notice of Overpaid Tax issued to Graciela Cardenas shows that an overpayment in the amount of $16,000.00 for her civil penalty for December 31, 1999 was applied to her civil penalty liability for December 31, 2001. The Notice of Overpaid Tax issued to Juan Cardenas shows that an overpayment in the amount of $8,036.90 for his civil penalty for December 31, 1999, was applied to his civil penalty liability for December 31, 2001. Plaintiffs contend incorrectly (Suppl. 2) that the Notices of Overpaid Tax sent to the Cardenases are an admission by defendant that plaintiffs' refund suit was timely filed because payments were made within two years of the filing of their, the Cardenases, claims.

However, I.R.C. § 6532(a)(1) provides that no tax refund suit "shall be begun before the expiration of 6 months from the date of filing the claim . . . unless the Secretary renders a decision thereon within that time." The Cardenases allege (Opp. Ex. A. ¶ 8) that they filed claims for refund on December 20, 2007. Plaintiffs filed their Second Amended Complaint on January 25, 2008. The Cardenases failed to wait the requisite six months required by § 6532(a)(1), and Count III of the Second Amended Complaint, which relies upon the claim for refund filed by the Cardenases on December 20, 2007, is therefore premature. *See Skillo v. United States*, 68 Fed. Cl. 734, 741 (2005).

Plaintiffs, in the case at bar, failed to provide probative evidence in support of the challenges raised to the Court's jurisdiction in this action. Therefore, plaintiffs have failed to meet their burden of establishing jurisdiction.

CONCLUSION

For the foregoing reasons, defendant's motion should be granted and the Court should dismiss without prejudice, from the Second Amended Complaint, the 2000 tax year for Cardenas & Sons; the 1993, 1997, 1999, 2001 and 2002, tax years for Rio Vista; and the claim for refund for Juan Cardenas and Graciela Cardenas. The Court should proceed with the tax years 1993, 1995, and 1998, for Cardenas & Sons, and the Court should proceed with the tax years 1996 and 2003 for Rio Vista.

Respectfully submitted,

s/Jennifer Dover Spriggs

JENNIFER DOVER SPRIGGS
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0840

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

s/David Gustafson
Of Counsel

April 16, 2008